IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
|    MICHAEL G. MINOR, | : | |
|        DEBTOR. | : | BANKRUPTCY NO. 13-19278-MDC |

# MEMORANDUM

On April 9, 2015, this Court held a hearing (the "Confirmation Hearing") to address confirmation of the Third Amended Chapter 13 plan dated January 26, 2015 [Docket No. 62] (the "Third Amended Plan"), filed by Michael G. Minor (the "Debtor"). Prior to the Confirmation Hearing, the City of Philadelphia (the "City") filed an Objection to Confirmation of the Plan dated April 2, 2015 [Docket No. 71] (the "City's Objection"). At the Confirmation Hearing, the Debtor, the City, and the Chapter 13 Trustee appeared. Having given full consideration to the parties' arguments, this Court is now prepared to issue its decision.

**FACTUAL BACKGROUND**

The Debtor lives at 5510 Media Street, Philadelphia, Pennsylvania (the "Property"). The Debtor and his eight siblings inherited the Property from their deceased parents. On November 21, 2012, and pursuant to a writ of execution dated June 8, 2012, issued by the Court of Common Pleas of Philadelphia County, the Philadelphia Sheriff's Office conducted a tax sale (the "Tax Sale") to collect unpaid taxes due on the Property. Good Bet Trading, LLC ("Good Bet") was the successful bidder and paid $12,500 to the Philadelphia Sheriff's Office. On February 5, 2013, the Philadelphia Sheriff's Office signed and acknowledged a deed evidencing the transfer of the Property to Good Bet (the "Tax Deed"). The Tax Deed evidencing the sale was recorded on February 15, 2013.

In response to the Tax Sale, the Debtor filed in the Philadelphia Court of Common Pleas a Motion to Set Aside Sheriff Sale dated May 10, 2013, Case ID: 21-13051521 (the "State Court Action"), against Good Bet. In response, the City filed an answer dated July 3, 2013. On July 21, 2013, the Court of Common Pleas entered an order denying the motion.

On October 25, 2013, the Debtor filed a voluntary petition seeking Chapter 13 relief. On November 5, 2013, the Debtor filed a Chapter 13 plan (the "Original Plan"). In the Original Plan, the Debtor provided for payment to Good Bet of a series of sixty monthly payments of $266 for the total amount of $15,960. According to the Debtor, the purpose of these payments was to exercise his statutory redemption rights in the Property. In response, Good Bet filed an Objection to Confirmation of Plan dated March 10, 2014 [Docket No. 27] ("Good Bet First Objection"), wherein Good Bet argued confirmation was not possible because the Debtor's statutory redemption rights expired on November 5, 2013, and, in the alternative, application of the *Rooker-Feldman* Doctrine barred confirmation.[1]

Presumably in response to the objections to the Original Plan, the Debtor filed a First Amended Chapter 13 plan dated July 9, 2014 [Docket No. 35] (the "First Amended Plan"). However, prior to filing the First Amended Plan, the Debtor filed a proof of claim on behalf of Good Bet in the amount of $13,667.88 secured by an interest in the Debtor's home (the "Claim") pursuant to 11 U.S.C. §550(e). Good Bet did not object to the Claim and, by operation of 11 U.S.C. §502(a), the Claim is deemed an "allowed secured claim." The First Amended Plan provided for payment "100% of Good Bet Trading's allowed secured claim, with interest on the unpaid balance of the allowed secured claim in the amount of 10% simple interest per annum." First Amended Plan, ¶9.

Several months thereafter, the City appeared and filed an Objection dated September 17, 2014 [Docket No. 40] (the "City's First Objection"), wherein the City raised four objections to this Court's confirmation of the First Amended Plan. First, the City objected because the First Amended Plan allegedly did not provide for the payment of 2013 real estate taxes owed on the Property in the amount of $1,408.78 (the "2013 Tax Claim"). Second, the City objected because the Debtor failed to file a motion exercising his statutory right of redemption in the Property.[2] Third, the City objected because the Plan did not comply with applicable law by allowing for the Debtor to pay the redemption amount over the

---

[1] In addition, the Chapter 13 Trustee filed an objection to the Original Plan. However, the issues raised in that objection are not relevant to the matters discussed in this memorandum and therefore will not be discussed.

[2] As this Court has previously recognized, a debtor may exercise his right of redemption through the filing of a plan of reorganization. *In re Terry*, 505 B.R. 660, 665-66 (Bankr. E.D. Pa. 2014) ("*Terry I*").

2

Plan period. Fourth, the City objected that the Plan was not proposed in good faith because the Debtor filed for bankruptcy for the purpose of exercising his statutory redemption rights.

One day later, on September 18, 2014, Good Bet filed an objection to the First Amended Plan [Docket No. 42] ("Good Bet Second Objection," and together with the Good Bet First Objection, the "Good Bet Objections"). In it, Good Bet joined the City's First Objection, reiterated its prior grounds for objection and asserted feasibility as an additional objection. Specifically, Good Bet argued that the First Amended Plan may not be confirmed because the Debtor had not demonstrated the financial wherewithal to fund the plan payments and other post-petition expenses. Good Bet did not challenged the Debtor's proposed treatment of Good Bet as a holder of a secured claim.

A hearing to consider confirmation of the Debtor's First Amended Plan was scheduled for November 3, 2014. Prior to the scheduled hearing, the Debtor filed a Second Amended Chapter 13 Plan dated October 28, 2014 [Docket No. 49] (the "Second Amended Plan"). Pursuant to the Debtor's Second Amended Plan, the Debtor designated Good Bet as the holder of an allowed secured claim in the amount of the Claim and, consistent with the treatment proposed in the First Amended Plan, proposed to pay "100% of Good Bet Trading's allowed secured claim, with interest on the unpaid balance of the allowed secured claim in the amount of 10% simple interest per annum." Second Amended Plan, ¶8. Neither the City nor Good Bet filed an objection to the Second Amended Plan.

On November 3, 2014, this Court held an evidentiary hearing to address confirmation of the Second Amended Plan (the "Hearing"). At the Hearing, only the Debtor, the City, and the Chapter 13 Trustee appeared. Good Bet did not appear.[3] Although the City had not filed a written objection to the Second Amended Plan prior to the Hearing, the City participated in the hearing and voiced its objection to confirmation based upon the four reasons it had previously set forth in the City's First Objection. The substance of the City's objection related to the Debtor's attempt to exercise his right of redemption and pay the redemption amount over the plan period.

---

[3] Good Bet did not file an objection to the Second Amended Plan or appear to prosecute the Good Bet Second Objection. As a result, the Court dismissed the Good Bet Second Objection for lack of prosecution.

3

At the close of the Hearing, the City conceded that it did not have a claim against the Debtor. As a result, prior to addressing the City's objection and confirmation of the Second Amended Plan, this Court questioned the City's standing to object to plan confirmation. After hearing the parties' arguments, this Court requested the City and the Debtor submit briefs addressing four issues: (1) the City's standing to object to the Plan; (2) the nature of the Debtor's interest in the Property; (3) whether the Debtor is entitled to pay the redemption amount over the Plan period; and (4) the application of Fed. R. Bankr. P. 6008 to the Debtor's ability to redeem the Property. Upon receipt of the parties' papers, this Court took the matter under advisement.

However, before this Court was able to rule on the issues, the Debtor filed a Third Amended Chapter 13 Plan dated January 26, 2015 [Docket No. 62] (the "Third Amended Plan"). As a result, the City's pending objections to the Second Amended Plan were rendered moot. *See, e.g., In re Zaver*, 520 B.R. 159, 161 (Bankr. M.D. Pa. 2014) (recognizing that objection to plan confirmation are rendered moot by the filing of an amended plan). In the Third Amended Plan, the Debtor once again designated Good Bet as the holder of an allowed secured claim in the amount of $13,667.88 and once again proposed to pay 100% of the Claim plus 10% simple interest per annum. Third Amended Plan, ¶8. The Third Amended Plan further provides that the Debtor will make 60 monthly payments to Good Bet in the total amount of $17,424.00 comprised of the amount of Good Bet's secured claim plus 10% simple interest per annum.

In response to the Third Amended Plan, the City renewed its prior objections by filing the instant City's Objection. In the City's Objection, the City raised three reasons why it believed the Debtor's Third Amended Plan should not be confirmed. First, the City argues that the Third Amended Plan may not be confirmed because the Debtor failed to file a motion exercising his statutory right of redemption in the Property and therefore does not comply with Fed. R. Bankr. P. 6008. Second, the City argues that, allowing the Debtor to pay the redemption amount over the plan period does not comply with applicable state law. Third and finally, the City argues that the Plan may not be confirmed because it was not proposed in good faith. Good Bet did not file any objection to the Third Amended Plan.

4

**DISCUSSION**

    A.    **The City's Standing in this Chapter 13 Case**

Despite realizing its purposes and collecting upon its unpaid real estate taxes,[4] the City now comes before this Court to object to the Debtor's efforts to use bankruptcy to save his home. As this Court has previously expressed, the Bankruptcy Code permits a debtor to exercise his redemption rights by paying the redemption amount over the life of a Chapter 13 plan. *Terry I*, 505 B.R. at 660. Whether this Court's interpretation of applicable law is correct remains to be determined. Even if the City believes that this Court's prior decision was incorrect, the City's disagreement, standing alone, is not sufficient to confer standing upon the City in any bankruptcy case in which a debtor's interest in his home was the subject of a pre-petition tax sale. Before this Court may address the merits of the City's Objection, this Court must satisfy itself that the City has standing to be heard.[5] Unlike in the Terry bankruptcy, this Court can conceive of no jurisdictional basis that would allow the City to intervene.[6] The City has not filed a proof of claim and is otherwise not a creditor of the Debtor's estate. The Plan contains no language directed at the City that may give rise to even a trifling interest in the adjudication of plan confirmation. *See, e.g., Terry II*, 521 B.R. at 96 (recognizing that, as a result of language in a consent order directed at the City, the City "may be said to have a trifling interest in the adjudication of the matters presented by this Court's consideration").

---

[4] The City maintains that real estate taxes on the Property for tax year 2013, in the amount of $1,408.78, remain unpaid. These real estate taxes accrued after the occurrence of the Tax Sale and became due and payable during the post-petition period and therefore will not be discharged by the Debtor's bankruptcy. *See, e.g., In re Terry*, Bky. No. 13-14780, 2015 WL 1321486, *4 n.7 (Bankr. E.D. Pa. Mar. 13, 2015) ("*Terry III*") (discussing the City's ability to collect post-petition real estate taxes). If the City desired to participate in the administration of the Debtor's bankruptcy based upon the alleged accrual of post-petition real estate taxes, the City could have file a proof of claim asserting a §1305(a)(1) claim. *See, e.g., In re Halabu*, 501 B.R. 685, 696-97 (Bankr. E.D. Mich. 2012) ("The purpose of §1305(a) is to give creditors holding certain types of postpetition claims the choice of (1) filing a proof of claim in order to participate in distributions under the Chapter 13 Plan and thereby be bound by the terms of the Plan; or (2) not filing a proof of claim and collecting on their claims outside of bankruptcy once the bankruptcy case is closed."). The City did not file a §1305(a)(1) claim and therefore its efforts to collect any post-petition real estate taxes will not be affected by confirmation of the Plan.

[5] The City was given an opportunity to address the issue of its standing and did so in its Reply to the Debtor's Brief in Support of Confirmation dated January 26, 2015 [Docket No. 61].

[6] In the Terry bankruptcy, the City was the holder of a pre-petition claim in the amount of $816.63. *In re Terry*, 521 B.R. 90, 96 n.7 (Bankr. E.D. Pa. 2014) ("*Terry II*"). Here, the City has not filed a proof of claim or otherwise alleged that it is owed a pre-petition debt. As a result, it is not clear that the City may be said to be a "party in interest" within the meaning of §1109 who enjoys a broad right of participation in the Debtor's bankruptcy.

Contrary to the City's argument and as this Court discussed in *Terry II*, this Court is obligated to confirm a party's standing in order to determine whether the adjudication of the party's claim lies within its jurisdiction. *Terry II*, 521 B.R. at 96 (citing *Marin v. Leslie*, 337 Fed. Appx. 217, 219 (3d Cir. 2009)). Here, the City objects to plan confirmation. Pursuant to §1324(a), "[a] party in interest may object to confirmation of the plan." 11 U.S.C. §1324(a). Interpreting this language, the Third Circuit has found that the Bankruptcy Code's "party in interest" standard as the equivalent of Article III standing. *In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 209-11 (3d Cir. 2011) (addressing the standing of parties to objection plan confirmation). As stated in *Global*, "[t]o object to the confirmation of a reorganization plan in bankruptcy court, a party must, in the first instance, meet the requirements for standing that litigants in all federal cases face under Article III of the Constitution." *Id.* at 210.

To have standing under Article III of the Constitution, a party must establish three elements. *Id.* at 210 (reciting injury in fact, traceability and redressability requirements of constitutional standing). First, the party must demonstrate an "injury in fact" that is concrete and personal to it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (a plaintiff must allege an injury that affects her "in a personal and individual way."); *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972) (recognizing that a party may not assert the interests of the general public for purposes of establishing standing). Second, the party must demonstrate that its injury is traceable to the challenged conduct. Third and finally, the party must establish that the injury may be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560-61; *Global Indus. Technologies*, 645 F.3d at 210. As elaborated below, the City has failed to establish that confirmation of the Third Amended Plan will cause the City to suffer an injury in fact.

Despite this Court's previous expression of its doubts regarding the City's capacity to involve itself in the Debtor's exercise of its redemption rights,[7] the City advances two theories explaining how it

---

[7] The purpose of tax sales is to enable the City to collect delinquent taxes. *City of Philadelphia v. F.A. Realty Investors Corp.*, 95 A.3d 377, 384 (Pa. Cmwlth. 2014) ("the purpose of the sheriff's sale under the Act, to ensure the collection of the delinquent taxes, would be frustrated, or, at the very least, postponed."); *City of Philadelphia v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013) ("The purpose of sheriff's sales under the Municipal Liens Act, as well as tax sales under the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§5860.101-5860.803, *is not to strip the owner of his or her property but to collect municipal claims*."). (Emphasis added.) This

will be injured if the Third Amended Plan is confirmed and the Debtor is permitted to stretch out the payment of the Redemption Amount. First, the City states that it will be harmed because it may diminish the capacity of Good Bet to participate in future tax sales. Second, the City states that it will be harmed because the Debtor, if restored to ownership of the Property, is more likely than Good Bet to fail to pay real estate taxes and other municipal claims. This Court finds neither theory availing.

Assuming that Good Bet's ability or desire to participate in future tax sales may be impacted by this Court's confirmation of the Third Amended Plan, the harm that may flow to the City as a result is too remote to constitute a concrete and particularized invasion of a legally protected interest. *New England Power Generators Ass'n, Inc. v. F.E.R.C.*, 707 F.3d 364, 369 (D.C. Cir. 2013) ("broad-based market effects stemming from regulatory uncertainty are quintessentially conjectural…"). The City has not cited to specific tax sales that Good Bet would have participated. To the contrary, the City merely speculates that the Third Amended Plan may reduce the likelihood that Good Bet will participate in future tax sales prior to expiration of the plan period. Unlike the plaintiff in *The Pitt News*, nothing about the City's alleged injury is concrete. "Allegations of 'possible future injury' are not sufficient to satisfy Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011).

Despite the City's reliance on *The Pitt News*, this Court finds the decision sufficiently distinguishable to warrant the opposite result. In *The Pitt News*, the Third Circuit addressed the standing of a student-run newspaper to challenge the constitutionality of Act 199, a law prohibiting the advertisement of alcohol in materials published by an educational institution. As a result of this law, the newspaper suffered "a direct loss… of more than $17,000 in advertising revenue." *Id.* at 359. From this fact, the Third Circuit was able to conclude that the newspaper had demonstrated an injury in fact because it held "a personal stake in the outcome of this litigation." *Id.* at 360. Addressing the next element of standing, the Third Circuit confirmed that this injury was also traceable to the law. "This result was not only reasonably foreseeable when the Commonwealth decided to enact and enforce Act 199, it was the

---

purpose has been achieved. The City obtained payment of delinquent taxes. The purchaser, Good Bet, not the City, now has the right to payment from the Debtor the monies Good Bet paid to the City for the unpaid real estate taxes.

7

very goal of the statute." *Id.* at 361. Finally, the Third Circuit concluded that the injury was redressable because the newspaper "will see a dramatic increase in its advertising revenues if Act 199 is struck down as unconstitutional." *Id.*

Here, the City has argued that it will be injured by confirmation of the Third Amended Plan because Good Bet's ability to participate in future tax sales will be diminished and the City's ability to conduct tax sales may be compromised by an alleged chilling effect this procedure may have on capital markets. This Court finds these allegations insufficient to establish the existence of an injury in fact. The mere fact that the state law rights acquired by a purchaser at a tax sale may be later modified through the application of the Bankruptcy Code is not sufficient to establish that the City has standing to object to the Debtor's ability to avail himself of the privileges afforded to him by the Bankruptcy Code. The fact that Congress has enacted regulations that may impact the City's interests does not confer standing upon the City. *See, e.g., In re PPI Enters., Inc.*, 228 B.R. 339, 344-45 (Bankr. D. Del. 1998) ("In enacting the Bankruptcy Code, Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy rights.").

Assuming that the City is correct, the fact that the relief provided by this Court in connection with the implementation of the Debtor's Third Amended Plan will increase the uncertainty associated with tax sales cannot constitute an "injury in fact" for purposes of establishing that the City is a party in interest who may object to plan confirmation. In *New England Power*, the Court of Appeals for the District of Columbia Circuit addressed the standing of electricity providers to object to a decision by the Federal Energy Regulatory Commission ("FERC") relating to rates charged for electricity generation. The technical issues relating to FERC's rate decision are irrelevant to this Court's present consideration. However, in response to the court's questioning of the providers' standing, the providers raised an argument similar to the one pressed by the City. As evidence of their purported injury caused by FERCs rate setting decision, the electricity providers argued that FERC's ruling would have a "chilling effect" on their capacity to attract capital investments. *New England Power*, 707 F.3d at 369. The court found the

8

argument unavailing explaining "broad-based market effects stemming from regulatory uncertainty are quintessentially conjectural, and it is difficult to imagine a FERC action that would not confer standing under this theory." *Id.* at 369. The court went on to observe "[i]t would be a strange thing indeed if uncertainty were a sufficiently certain harm to constitute an injury in fact." *Id.*

The same is true here. As in *New England Power*, the City's argument lacks any limiting principle. Inevitably, the administration of bankruptcy laws will affect the operation of capital markets. According to the City's reasoning, any party engaged in a business environment that may be impacted by the restructuring of debtor-creditor relations would be entitled to participate in any specific bankruptcy case. The fact that a party operates in or otherwise relies upon those capital markets cannot confer on that party a carte blanche to intervene in any bankruptcy case and interfere with a debtor's attempts to exercise the privileges afforded by the Bankruptcy Code.

The Bankruptcy Code provides the Debtor with certain rights that he may utilize to address payment of the debt he owes to Good Bet. In this case, Good Bet is the holder of a secured claim. The Debtor has proposed to pay Good Bet's Claim in full including 10% interest. Good Bet, not the City, has the right to oppose the Debtor's proposed treatment of its Claim. Other than the Good Bet Objections, which were either rendered moot by virtue of the Debtor's amendment of his plan or overruled as a result of Good Bet's failure to prosecute, Good Bet has not objected to the Debtor's treatment of its secured claim. In fact, Good Bet has not participated in any way whatsoever in the Debtor's bankruptcy case since the filing of the Good Bet Second Objection. Good Bet did not file any objection to either the Debtor's Second Amended Plan or Third Amended Plan. Good Bet did not appear at the Hearing or the Confirmation Hearing. The fact that Good Bet elected not to oppose the Debtor's proposed plans and the proposed treatment of its Claim does not confer standing upon the City to assert the right that belongs exclusively to Good Bet. "Further, inherent in the requirement that a party in interest must have some 'legally protected' interest is the additional requirement that the party must be asserting its own rights and not that of another entity." *In re Alcide*, 450 B.R. 526, 535 (Bankr. E.D. Pa. 2011).

Consistent with its determination that the City has not suffered an injury in fact, this Court finds

9

that the City lacks standing to object to or participate in the plan confirmation process and will overrule the City's Objection. If the City desired to participate in the administration of the Debtor's estate, it could have filed a §1305(a)(1) claim. It did not. The fact that the City's ability to conduct tax sales may be generally affected by this Court's implementation of the Bankruptcy Code does not otherwise confer standing upon the City to participate in the Debtor's bankruptcy case. If the City sincerely believes its arguments, its remedy lies with Congress and not this Court.

      B.      **Confirmation of the Third Amended Plan**

Having concluded that the City lacks standing to object to the Third Amended Plan, this Court will confirm the Debtor's Third Amended Plan provided it complies with the requirements set forth by §1325(a) of the Bankruptcy Code.

> Under §1325(a), the Court must confirm a Chapter 13 plan, in the absence of an objection by the Chapter 13 Trustee or an unsecured creditor, if (1) the plan satisfies the provisions of Chapter 13 and other applicable provisions of Title 11; (2) the requisite court fees and charges have been paid; (3) the plan is proposed in good faith; (4) the plan meets the liquidation alternative test-the value, as of the effective date of the plan, of property to be distributed under the plan on account of each unsecured claim must be not less than the amount that would have been paid on that claim if the estate of the debtor were liquidated under Chapter 7 on the effective date of the plan; (5) each secured creditor has accepted the plan, or the plan provides that each secured creditor retain its lien in addition to receiving the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim, not less than the allowed amount of such claim, or the debtor surrenders the property securing such claim; and (6) the plan is feasible.

*In re Pohl*, 316 B.R. 862, 864 (Bankr. W.D. Pa. 2004).

Here, neither the Chapter 13 Trustee nor an unsecured creditor has objected to confirmation of the Third Amended Plan. As such, this Court is required to confirm the Third Amended Plan if it complies with the requirements of §1325(a)(1) through (6). The Court finds that the Debtor satisfied all of the provisions of the Bankruptcy Code §1325(a)(1). The dockets in this case reflect that the Debtor has paid all of the required fees and charges.[8] The plan is feasible in that it provides for payment of all of the Debtor's disposal income and will allow unsecured creditors to receive a pro rata distribution on their

---

[8] A bankruptcy court may take judicial notice of the docket entries and orders entered in prior bankruptcy cases filed by a debtor for the purpose of establishing the existence of those materials but not the truth of the facts asserted in them. *In re Madera*, Bky. No. 07-17296, 2008 WL 351446, *1 n. 1 (Bankr. E.D. Pa. Feb. 7, 2008); *In re Dawson*, Bky. No. 07-15741, 2007 WL 4190772, *1 n. 3 (Bankr. E.D. Pa. Nov. 20, 2007).

claims. 11 U.S. C. §1325(a)(4)(6). Significantly, by proposing to pay 100% of Good Bet's allowed secured claim plus 10% simple interest per annum, the Third Amended Plan provides that Good Bet will receive payments equal to the present value of its allowed secured claim as required by §1325(a)(5). *See, e.g., Rankin v. DeSarno*, 89 F.3d 1123, 1128-29 (3d Cir. 1996).

**CONCLUSION**

The Court finds that the City lacks standing to object to confirmation of the Debtor's Third Amended Plan. Even if the City had standing to object, the Court will confirm the Third Amended Plan because it complies with the requirements of §1325(a). An appropriate order will be entered.

Dated: June 9, 2015

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

Jane P. Nylund, Esquire
Irwin L. Trauss, Esquire
Philadelphia Legal Assistance
718 Arch Street, Suite 300 N
Philadelphia, PA  19106

Jacqueline M. Chandler, Esquire
Office of the Chapter 13 Trustee
P.O. Box 40119
Philadelphia, PA  19106

James C. Vandermark, Esquire
Assistant City Solicitor
City of Philadelphia Law Department
Municipal Services Building
1401 JFK Boulevard, 5tth Floor
Philadelphia, PA  19102

Courtroom Deputy
Eileen Godfrey